IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DENNIS BAUMGARDEN,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
|   **v.** | )   CAUSE NO. 04-CV-568-WDS |
| | ) |
| **CHALLENGE UNLIMITED, INC.,** | ) |
| | ) |
|       **Defendant.** | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court are the parties' cross-motions for summary judgment, and responses filed thereto.

## BACKGROUND

This action arises out of plaintiff's former employment with defendant. The complaint alleges that plaintiff was employed as the Director of Information Services, and that plaintiff took leave under the Family Medical Leave Act ("FMLA") from January 8, 2003, to March 10, 2003, at which time he attempted to return to work. He claims he was wrongfully prevented from returning to work until he saw a company physician, and that, once he was allowed to return to work, he was retaliated against, his duties were diminished and he was discriminated against in that he was replaced as Director of Information Services by Mike Robinson, a younger individual with no disabilities. He claims that the work environment became hostile to the point where he was forced to resign on July 30, 2003.

Count I of the complaint alleges a violation of the FMLA. Count II alleges a violation of the Americans with Disabilities Act. Finally, Count III alleges age discrimination. Defendant

filed its motion for summary judgment as to all counts of the complaint. Plaintiff responded with a cross-motion for partial summary judgment as to Count I only. Plaintiff has not responded to defendant's motion for summary judgment with respect to Counts II and III.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as matter of law. See, *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. See, *id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. See, *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

The Court will first briefly address Counts II and III. With respect to Count II, defendant argues that plaintiff was not a qualified individual under the ADA, specifically, that he was not "disabled" as that term is defined by the ADA. With respect to Count III, defendant argues that even if plaintiff could prove that he was replaced by Mike Robinson (a fact that defendant disputes), Robinson is only three years younger than plaintiff, which plainly contradicts plaintiff's age discrimination claim. As noted, plaintiff has not responded to defendant's well-

reasoned and properly supported arguments. Upon review of the arguments presented in defendant's motion, the Court finds that summary judgment in favor of the defendant is appropriate on Counts II and III.

In order to address defendant's motion with respect to Count I, it is helpful to set forth the allegations in the complaint more thoroughly. Plaintiff alleges: that he was wrongfully prevented from returning to work until he saw a company doctor; that he was retaliated against in that he was stripped of his duties and title; that he was ordered to return his company keys and credit card; and that he was assigned menial tasks, for example, cleaning out the hot, un-air-conditioned warehouse. He further claims that as a result of the hostile work environment, he was constructively discharged, specifically, that he was assigned tasks in extreme working conditions despite defendant's knowledge that he suffered from obesity, heart disease and diabetes, and that the working conditions were so unbearable that he was forced to resign.

The FMLA provides that, under certain circumstances, an employer must allow an eligible employee to take up to twelve work weeks of leave during any twelve-month period because of a serious health condition that prevents the employee from performing the functions of his position. 29 U.S.C. § 2612(a)(1)(D). In furtherance of this goal, the Act allows both for the employee to take leave and to be reinstated when his leave is finished. Upon return the employee is guaranteed reinstatement to the employee's original position or an 'equivalent position'. 29 U.S.C. § 2614(1). Here, plaintiff was provided leave from his position because of a serious health condition under the FMLA.

"A claim under the FMLA for wrongful termination can be brought under either a

discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). Here, it appears that plaintiff is alleging retaliation and a hostile work environment, as well as seeking relief under an interference/entitlement theory.

In support of its motion for summary judgment on Count I, defendant first attempts to rebut plaintiff's assertion that he was replaced by Mike Robinson, and that he was no longer responsible for management of the MIS program. Defendant maintains that plaintiff's title was "information specialist" and not "director", and therefore, when Mike Robinson was hired as the director, he did not technically replace plaintiff. However, even defendant admits that plaintiff may have been "referred to" as director, although his official title remained that of information specialist. Plaintiff has submitted evidence that he was referred to as "Director of MIS - Information Specialist" on a performance evaluation and on a grievance report response. (See, Doc. 32, Ex. A-4). The Court finds that an issue of fact remains with respect to whether plaintiff was in fact replaced by Robinson.

Defendant also claims that it was routine for it to request fitness-for-duty examinations, and that requiring such examinations is permissible if it is "job-related and consistent with business necessity." In response, plaintiff claims that because he was released by his own doctor with no restrictions, defendant was not permitted to require him to submit to an exam by the company selected doctor. Plaintiff claims that he should have been reinstated to his position first, and then defendant, if it had concerns about his ability to do his job, could have ordered further

4

examination as necessary. Both parties cite *Harrell v. U.S. Postal Serv.*, 415 F.3d 700 (7th Cir. 2005), *vacated and set for rehearing* on an unrelated issue (7th Cir. Nov. 1, 2005). Essentially, the *Harrell* court noted that the FMLA requires an employer to allow an employee to return to work based solely upon the certification of the employee's own health care provider, and held that any requirement imposing a greater burden on the employee than the return-to-work provisions of the FMLA violate the employee's rights. *Id.* at 713. Here, plaintiff argues that defendant impermissibly required him to submit to further medical examination prior to his return to work after being released to return by his own doctor.

  Based upon the evidence before the Court, plaintiff's argument is well taken. It is clear that defendant violated plaintiff's rights under the FMLA by requiring him to submit to a further fit-for-duty exam by defendant's company selected doctor prior to allowing him to return to work when he had already been certified fit to return to work by his own doctor as required under the FMLA. Defendant asserts that it allowed plaintiff to return to work prior to requiring a further examination; the evidence, however, points to the contrary. (See, e.g., Doc. 32, Ex. L, "Plan of Action" dated March 10, 2003, stating that: "Employee will most likely have a release to return to work.... Employee will be informed that he will not be allowed to return to work however.... [W]e are requiring, in this case, that he be seen by our psychiatrist before he starts back to work...."). In fact, defendant states in its brief that "*following* his [company-required fit-for-duty] evaluation..., the Plaintiff returned to work on April 28, 2003." Under *Harrell*'s reasoning, defendant was required to reinstate plaintiff upon his physician's release, and only then could it impose a further examination requirement. Defendant presents no evidence that plaintiff was permitted to return to work prior to the completion of a medical review by a

5

company selected doctor. The only evidence that defendant provides on this issue is that plaintiff, despite being advised that his "leave" pending examination would be unpaid, was in fact paid his salary pending completion of the company required examination. (See, Doc. 24, Ex. B-2, p. 34). However, defendant was required to allow plaintiff to return to work. Accordingly, the Court grants summary judgment in favor of plaintiff on plaintiff's claim that defendant interfered with plaintiff's rights under the FMLA by requiring plaintiff to submit to a company-imposed medical examination prior to returning to work, when his own physician had certified him as able to return work with no restrictions.

Finally, defendant takes issue with plaintiff's claim that defendant stripped plaintiff of his management job duties.

> The FMLA entitles employees who have returned from a family or medical leave to be reinstated to the position they held before leave, or to an equivalent one. 29 U.S.C. § 2614(a)(1). An equivalent position is one that is virtually identical to the former position in terms of pay, benefits, and working conditions. 29 C.F.R. § 825.215(a). It must involve the same or substantially equivalent skill, effort, responsibility, and authority. 29 C.F.R. § 825.215(a); *Watkins v. J & S Oil Co.*, 164 F.3d 55, 59 (1st Cir.1998). This equivalency requirement does not extend to de minimus or intangible, unmeasurable aspects of the job. 29 C.F.R. § 825.215(f).

*Mitchell v. Dutchmen Mfg., Inc.*, 389 F.3d 746, 748 (7th Cir. 2004).

Defendant argues that most of the "stripping" of plaintiff's job duties occurred as a result of plaintiff's requests for accommodations and not in order to retaliate against plaintiff. For instance, plaintiff had concerns about working in a hot warehouse, and defendant responded by having plaintiff work in an air-conditioned room; plaintiff also had concerns about heavy lifting, and defendant responded by buying a dolly. Defendant asserts that plaintiff's salary, benefits and job title never changed. In response, plaintiff argues that he was not reinstated to the same or

a substantially similar position. He claims that his job duties were diminished, and that it was not due to his own requests as defendant argues; he claims that his requests were a result of trying to adapt to his "new" and diminished responsibilities. It is undisputed that plaintiff's salary did not change. The Court has already concluded that an issue of fact remains as to whether plaintiff was replaced as director by Mike Robinson. Accordingly, the remaining issue is whether plaintiff's job duties were so diminished so as to violate the FMLA.

     Defendant claims that plaintiff's job duties remained substantially similar after he returned from leave. Plaintiff, however, complains that he was assigned tasks that were both purposefully humiliating and harmful to his health. Specifically, he was assigned tasks such as posting jobs on the company's website, updating the newsletter, and working in the overheated warehouse. Further, he was allegedly "chased out of the building" if he arrived before 8:00 a.m. or stayed past 4:30 p.m. Defendant counters that it made numerous attempts to comply with plaintiff's work requests, and that if plaintiff's job duties were at all diminished, any reduction was in response to plaintiff's requests or to help relieve the stress that caused his medical condition in the first place.

     Upon review, the Court finds that the dispute over the alleged diminishment of plaintiff's job duties is a question for the trier of fact and not for the Court. Moreover, plaintiff's claim that the diminishment of his duties and the requirement that he see a company selected medical provider constitute retaliation for taking leave under the FMLA is also properly decided by a jury. There is simply insufficient evidence in the record to determine as a matter of law that

defendant did or did not retaliate against plaintiff.[1]  Finally, defendant did not set forth any argument with respect to whether, assuming that plaintiff's allegations, if true, amounted to a hostile work environment, the alleged conduct rose to the level of constructive discharge.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** defendant's motion for summary judgment (Doc. 23) on Counts II and III, and **DENIES** the motion on Count I.  The Court **GRANTS** plaintiff's cross-motion for partial summary judgment (Doc. 29) with respect to his claim that defendant violated plaintiff's rights under the FMLA by requiring a fit-for-duty examination by a company-recommended psychiatrist prior to allowing plaintiff to return to work when plaintiff had been found fit to return to work by his own doctor.  The Court **DENIES** plaintiff's motion on all other claims in Count I.

**IT IS SO ORDERED.**

**DATED:   November 28, 2005.**


        s/ WILLIAM D.  STIEHL
            DISTRICT JUDGE

---

[1] The Court notes that neither party clearly sets forth the complete framework for analyzing a retaliation claim.
   In order to prove a claim of retaliation for the exercise of rights under the FMLA, the plaintiff must prove that defendant acted with a discriminatory animus.  The plaintiff may do so by providing direct evidence of discriminatory intent. "There are two types of permissible evidence under the direct method: direct evidence and circumstantial evidence. The former essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus. The latter is evidence that allows a jury to infer intentional discrimination by the decision-maker." *Buie v. Quad/Graphics, Inc*., 366 F.3d 496, 503 (7th Cir. 2004)(internal quotes omitted). Plaintiff may also prove retaliation through the indirect method, namely, plaintiff must establish a *prima facie* case of retaliatory discharge by proving that "after engaging in protected conduct only he, and not any similarly situated employee who did not engage in protected conduct, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment." *Id.* (internal cites omitted).